[Civ. No. 49760. First Dist., Div. Five. July 15, 1983.]

GROWTH PROPERTIES, Plaintiff and Appellant, v.
ARTHUR J. LEMPERT et al., Defendants and Respondents.

COUNSEL

Susan Landon Marks and Bianchi, Hoskins & Rosenberg for Plaintiff and Appellant.

Arthur J. Lempert in pro. per., and Layman, Julien & Lempert for Defendants and Respondents.

OPINION

HANING, J.—Plaintiff/appellant Growth Properties (Growth) appeals from a judgment in favor of defendants/respondents Arthur and Susan Lempert (Lempert), husband and wife, on its causes of action for interference with an advantageous business interest, conversion and impairment of a security interest. ■ The question before us is whether a secured creditor under the Uniform Commercial Code is precluded from bringing such actions against a third party purchaser of the collateral after the creditor's perfected rights in the collateral have lapsed, even though the statute of limitations for the individual causes of action has not expired. We hold that a secured creditor who allows a financing statement to lapse is barred from maintaining such actions.

In 1971, Growth made a loan of $25,000 to James and Phyllis McGrew and Capital Property Management (McGrew). The loan was due and payable by September 15, 1971. As security for the loan, McGrew pledged his interest as a general and limited partner in Lanai Investors, a limited partnership. In the event of default, Growth could be substituted as a general and limited partner in Lanai. Arthur Lempert, a limited partner in Lanai,

consented to this security arrangement, and pursuant to California Uniform Commercial Code section 9403,[1] Growth filed a UCC financing statement with the Secretary of State on May 4, 1971. The only asset of Lanai was an apartment house.

McGrew defaulted and Growth made several informal efforts to obtain repayment, but took no action toward satisfying the debt via its rights in Lanai Investors, nor did it ever notify Lempert or anyone else that McGrew was in default.

On April 1, 1973, Lempert purchased the interest of all partners in Lanai, including McGrew's. On January 7, 1974, Lempert recorded an Amendment to the Certificate of Limited Partnership of Lanai indicating the change in partnership ownership. On May 23, 1974, Lanai conveyed title of the apartment to Susan Lempert. In September 1975, McGrew prepared to file a petition in bankruptcy. At that time he told Lempert that the debt to Growth had not been paid. Lempert immediately informed Growth of the impending bankruptcy. He also told Growth that there was an opportunity to set aside some of McGrew's assets to pay the debt or prevent its being discharged in bankruptcy, if Growth acted quickly. However, Growth continued to take no action to protect its interest until it filed its complaint against Lempert on July 8, 1976. The facts pertinent to this appeal are that the suit was brought more than five years after the UCC financing statement was filed, and that the statement was never renewed.

Section 9306, subdivision (2) states, "Except where this division otherwise provides, a security interest continues in collateral notwithstanding sale . . . thereof [by the debtor] unless the disposition was authorized by the secured party in the security agreement. . . ." Comment 3 to this section elaborates: "In most cases when a debtor makes an unauthorized disposition of collateral, the security interest, under prior law and under this Article, continues in the original collateral in the hands of the purchaser or other transferee. That is to say, since the transferee takes subject to the security interest, the secured party may repossess the collateral from him or in an appropriate case maintain an action for conversion." ■ As cases and scholars have noted, the "appropriate" time for a secured party to maintain a conversion action against a transferee is "where the secured party is entitled to possession but the transferee either (1) refuses to give up possession of the property or (2) cannot return the collateral because he himself has made a further disposition of it . . . . In none of these [cited] cases is the

---

[1]All statutory references are to the California Uniform Commercial Code. Unless otherwise noted, the California Uniform Commercial Code is identical to the Uniform Commercial Code.

transferee's liability for conversion based solely on the fact that he bought or otherwise took property which was subject to a prior encumbrance; in all these cases the transferee is liable because he dealt with collateral in a manner that is inconsistent with the superior interest and rights of a secured party." (Nickles, *A Localized Treatise on Secured Transactions—Part II: Creating Security Interest* (1981) 34 Ark.L.Rev. 559, 655-656.)

■ The sale of McGrew's interest in Lanai to Lempert was not authorized by Growth, so Growth's security interest continued in Lanai Investors even though the collateral was in Lempert's hands. By virtue of McGrew's default in the loan repayment, Growth had the right to immediate possession of McGrew's interest in Lanai. As long as the substance of Growth's collateral remained the same under Lempert's ownership as it did under McGrew's, Lempert had not dealt with the collateral in a manner inconsistent with Growth's interest in the collateral. However, when Lempert conveyed Lanai's only asset to his wife in 1974 without payment to the partnership, thereby rendering the partnership valueless, a conversion and an impairment of the security interest occurred. The statute of limitations for conversion and for impairment is three years. (Code Civ. Proc., § 338, subd. (3).) Growth's 1976 filing of this action was, therefore, timely. An action for interference with an advantageous business interest must be brought within two years of the interference. (Code Civ. Proc., § 339, subd. (1).) Because this complaint was filed more than two years after the interference, that cause of action is barred by the statute of limitations.

Abutting the apparent timeliness of the conversion and impairment actions is section 9403, subdivision (2) which states, in pertinent part, "[A] filed financing statement is effective for a period of five years from the date of filing. The effectiveness of a filed financing statement lapses on the expiration of such five-year period unless a continuation statement is filed prior to the lapse. . . . Upon such lapse the security interest becomes unperfected unless it is perfected without filing.[2] *If the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser . . . before lapse.*" (Italics added.) Official comment 3 to this section states, "Under subsection (2) the security interest becomes unperfected when filing lapses. Thereafter, the interest of the secured party is subject to defeat by purchasers . . . even though before lapse the conflicting interest may have been junior. Compare the situation arising under Section 9-103(1)(d) when a perfected security interest under the law of another jurisdiction is not perfected in this state within four months after the property is brought into this state." (American Law Institute, Uniform

---

[2]This interest did not become perfected without filing. (Cf. § 9302, subd. (3).)

Commercial Code: 1972 Official Text and Comments of Article 9 Secured Transactions, p. 142.) Growth filed the financing statement May 4, 1971. No continuation statement was ever filed, so the security interest became unperfected May 4, 1976, two months prior to the filing of the complaint herein.

No code comments or California cases reconcile the timing of a conversion action with a lapse of perfection, nor have scholars analyzing section 9403 considered this dilemma, even though they find the section unambiguous in giving the secured party only conditional protection against competing, pre-lapse interests. (See e.g. Henson, Secured Transactions under the Uniform Commercial Code (2d ed. 1979) p. 81; Pearson, *Absolute versus Conditional Protection for Secured Parties: Problems of Lapsed Perfection Under Article 9 of the Uniform Commercial Code* (1979) 17 Hous.L.Rev. 1, 21.) However, one case and several articles discussing section 9103, subdivision (1)(d)(i), a section with an analogous timing concern, have deliberated this problem.

Section 9103, subdivision (1)(d)(i) deals with multiple state transactions. Under this section, collateral brought into this state while subject to a security interest perfected in another state remains subject to that perfection for four months. If the secured creditor does not perfect his interest in California within that four-month period, the interest becomes unperfected "and is thereafter deemed to have been unperfected as against a person who became a purchaser after removal."

*United States* v. *Squires* (S.D.Iowa 1974) 378 F.Supp. 798 illustrates the operation of this section. The Farmers Home Administration (FHA) made loans to a husband and wife in South Dakota. The parties entered into a security agreement covering certain property, which the FHA perfected by filing with the state of South Dakota. The property was later moved to Iowa, where it was sold to defendant, who then sold it within the four-month period. At no time did the FHA perfect its security in Iowa. The court ruled the FHA's conversion action was not barred by the statute of limitations (*id.*, at p. 801), but sustained the defendant's motion for summary judgment and dismissed the complaint. It held the FHA's interest in the property became junior to a purchaser for value with no knowledge of the security interest at the end of the four-month period because the FHA failed to perfect its security interest in Iowa within four months after the property was moved there from South Dakota. In fact, the court believed that comment 3 to section 9403 supported, by analogy, defendant's position on section 9103[(1)(d)(i)] that upon lapse of perfection a purchaser gains an interest superior to that of the secured creditor. (*Id.* at p. 805.)

The issue of knowledge arose in *Squires* because the defendant purchased the collateral in Iowa without the FHA having perfected its security interest in that state. Under section 9301, subdivision (1)(c), an unperfected security interest is subordinate to the rights of a nonsecured party who is a buyer not in the ordinary course of business to the extent the buyer gives value and receives delivery of the collateral without knowledge of the security interest and *before* it is perfected. According to this section, if the defendant had known of the FHA's interest at the time he bought the collateral he would not have obtained a right superior to the FHA.

Unlike section 9301, section 9403 does not refer to "knowledge." It is concerned with the effect of a lapse of perfection on the rights of postperfection, prelapse purchasers. The knowledge of the purchaser is irrelevant to a determination of priorities under section 9403. As legal writers have observed, the element of notice has been of little importance in determining priority under article 9. "At common law, one might have argued that regardless of the equities favoring the purchaser, constructive notice of a prior security interest was sufficient to subordinate the interests of . . . intervening purchasers . . . to that of the secured party, even after lapse. . . . The Review Committee [of the 1972 UCC] eliminated the knowledge requirement [in determining whether a lien creditor had priority over an unperfected security interest] because 'it was completely inconsistent in spirit with the rules of priority between security interests, where knowledge plays a very minor role.' [Quoting Uniform Commercial Code, *supra,* at p. 764.] Given the Code's deemphasis of the knowledge requirement in most priority contexts, it is unlikely that a court would find this common-law argument compelling under the 1972 Code." (Pearson, *supra,* at pp. 24-25; see also White and Summers, Uniform Commercial Code (2d ed. 1980) p. 1036.)

In considering priorities to collateral under section 9103, one author concluded that the "importation of tort law is an unnecessary intrusion into a problem otherwise solvable by the Code. [The right of a state A secured creditor who fails to perfect his security interest in state B vis-à-vis the right of the postremoval, prelapse state B purchaser of that collateral] is a priority problem under the Code, not a matter of the tort law of conversion." (Henson, *supra,* at p. 341.) Given the trend in the 1972 Code "toward requiring a high level of diligence by secured parties in policing their debtors" (Pearson, *supra,* at p. 23), we believe the same approach should be taken toward section 9403. ■ Growth's perfected security agreement lapsed upon its failure to file a continuation statement. Thereafter, by the clear language of section 9403, Lempert, as a prelapse purchaser of Lanai, gained a superior interest.

The judgment is affirmed.

Low, P. J., and King, J., concurred.