**UNITED STATES of America, Plaintiff,**

v.

**Erval HANSEN, Defendant.**

**Civ. No. 86–C–1125G.**

United States District Court,
D. Utah, C.D.

Jan. 21, 1988.

Kathleen B. Barrett, Asst. U.S. Atty., Salt Lake City, Utah, for plaintiff.

Bruce E. Coke, Salt Lake City, Utah, for defendant.

### MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the court on November 24, 1987, on defendant's Motion for Summary Judgment. Plaintiff United States of America was represented by Kathleen B. Barrett. Defendant Erval Hansen ("Hansen") was represented by Bruce E. Coke. Counsel for the parties

submitted memoranda of law and presented oral argument, after which the matter was taken under advisement. The court now being fully advised sets forth its Memorandum Decision and Order.

## FACTUAL BACKGROUND

On September 28, 1982, Hansen entered into a written agreement with Courtney and Sherries Ewles ("Ewles") to purchase certain real and personal property. At that time plaintiff, through Farmers Home Administration ("FmHA"), held liens on the real estate and farm equipment owned by the Ewles securing a debt in excess of $300,000.00. Hansen, Ewles and an FmHA representative Dwayn C. Paskett ("Paskett") were present at the closing on October 8, 1982. Hansen delivered a cashier's check to FmHA for $100,000.00. Although Hansen claims that this was paid in return for a full release of FmHA's liens on all real and personal property purchased by Hansen, that matter is in dispute. FmHA's security interest in the farm equipment was evidenced by financing statements filed in the office of the Secretary of State in 1979 and 1981. However, no continuation statement was filed as to the financing statement upon which FmHA relies, and it was allowed to lapse. On August 29, 1983, Paskett sent Hansen a letter informing Hansen that FmHA's lien on certain farm equipment had not been released and that Hansen may be asked to return the property or pay over its value at the time it was purchased. On July 23, 1985, Paskett sent Hansen a certified letter demanding that Hansen make the farm equipment available to FmHA, and on December 16, 1986, plaintiff filed this complaint for conversion, praying for judgment for the delivery of a New Holland Balewagon and an International Grain Drill ("Collateral") or for the reasonable value thereof and costs.

## ANALYSIS

Hansen claims that once FmHA's financing statement lapsed, it lost priority as to Hansen even though the Collateral was purchased prior to the lapse and at a time that FmHA had a perfected security interest. Hansen relies on Utah Code Ann. § 70A–9–403 to support his claim.[1] On the other hand, FmHA claims that Utah Code Ann. § 70A–9–301 (1953) governs this situation.[2] A discussion of the nature and status of FmHA's security interest will bring those contending viewpoints into focus.

A. *Effect of Sale of Collateral Upon FmHA's Security Interest*

In general, a valid security agreement is not only effective as between the parties but also as against third parties.[3] This

---

1. Unless otherwise noted references to Title 70A of the Utah Code are identical to corresponding sections of the Uniform Commercial Code. Section 70A–9–403(2) provides that;

   [a] financing statement is effective for a period of five years from the date of filing. The effectiveness of a filed financing statement lapses on the expiration of the five year period unless a continuation statement is filed prior to the lapse.... *Upon lapse the security interest become unperfected ... it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse.*

   Utah Code Ann. § 70A–9–403 (1953) (emphasis added).

2. Section 70A–9–301 provides:

   (1) Except as otherwise provided in subsection (2), *an unperfected security interest is subordinate to the rights of*
      (a) persons entitled to priority under section 70A–9–312;

   (b) a person who becomes a lien creditor before the security interest is perfected;
      (c) in the case of goods, instruments, documents, and chattel paper, *a person who is not a secured party and who is* a transferee in bulk or other *buyer not in ordinary course of business,* or is a buyer of farm products in ordinary course of business, *to the extent that he gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected;*
      (d) in the case of accounts and general intangibles, a person who is not a secured party and who is a transferee to the extent that he gives value without knowledge of the security interest and before it is perfected.
   (emphasis added).

3. Utah Code Ann. Section 70A–9–201 (1953) provides; "[e]xcept as otherwise provided by this act a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors." *See also City Nat'l Bank and Trust Co. v. Pyle,* 25 Wash.App. 583, 609 P.2d 966, 968 (1980).

general proposition is reiterated in Utah Code Ann. § 70A–9–306(2):

Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise....

Under these principles, the sale by Ewles to Hansen of the Collateral did not, in and of itself, affect FmHA's security interest therein. By virtue of the financing statement, filed on June 23, 1981, FmHA had a perfected security interest in the Collateral at the time of Hansen's purchase. Indeed, at the time of FmHA's demand for the Collateral from Hansen, FmHA still had a perfected security interest in the Collateral.

B. *Effect of FmHA's Failure to File A Continuation Statement*

■ The clear language of section 70A–9–403(2) provides that the lapsing interest "becomes unperfected." In *United States v. Central Livestock Corp.*, 616 F.Supp. 629, 634 (D.Kan.1985), the court made it clear that the unperfected status relates back in time to the original filing as against a post-perfection, pre-lapse purchaser. Therefore, "an interest which becomes unperfected because of a lapse, is subject to defeat by all persons who take priority over an unperfected interest." *Morse Electro Products v. Beneficial Indus. Loan Co.*, 90 Wash.2d 195, 579 P.2d 1341, 1343 (1978). The question becomes whether under the circumstances of this case, on the present record and as a matter of law,

Hansen takes priority over FmHA's unperfected interest.[4] This court reads section 70A–9–403(2) as establishing only that the interest is unperfected, with further analysis and determination needed as to the priority between Hansen, as purchaser of the Collateral, and FmHA as holder of an unperfected interest.[5]

C. *Purchaser Priority Versus Holder of Unperfected Security Interest*

Section 70A–9–301(1)(c) in relevant part, provides that an "unperfected security interest is subordinate to the rights of [a] buyer not in ordinary course of business ... to the extent that he gives value and receives delivery of the collateral *without knowledge of the security interest and before it is perfected*."[6] (Emphasis added.) Case authority persuades this court that the rights of FmHA and Hansen are governed by 70A–9–301(1)(c).

Hansen argues that section 70A–9–301(1)(c) cannot apply to him because the section requires that he acquire the collateral "before it is perfected." However, in *Branford State Bank v. Hackney Tractor Co., Inc.*, 39 UCC Rep. 1134, 455 So.2d 541 (Fla.Dist.Ct.App.1984) the court stated "[s]ection ... 9–301(1)(c)'s final requirement is that a purchaser receive delivery of the collateral 'before it is perfected.' Under the provisions of ... 9–403(2), however, [the purchaser, *if without knowledge of the security interest at the time of the purchase*] can have priority [over the now unperfected security interest] despite tak-

---

4. Hansen relies upon *Growth Properties v. Lempert,* 36 UCC Rep 744, 144 Cal.App.3d 983, 193 Cal.Rptr. 102 (1983) to support his claim that section 70A–9–403 determines priorities where a perfected interest becomes unperfected due to a lapsed financing statement. This court finds the *Lempert* court's reasoning inapposite and therefore unpersuasive. On the one hand the *Lempert* court looked to 9–301 to determine priority between the holder of an unperfected security interest and a purchaser where the collateral became unperfected due to removal of the collateral from one state to another. The *Lempert* court then noted that the "knowledge" requirement of 9–301 was not found in 9–403, as though the absence of a knowledge requirement in § 9–403 not only rendered a lapsed perfected security interest unperfected but also

gave priority status to intervening purchasers. A close reading of § 9–403 reveals that it does not speak to priority status at all. The *Lempert* court avoided discussion as to why 9–301 should not be read as applicable to determine priorities between the holder of an unperfected security interest and a purchaser where that interest becomes unperfected for whatever reason, including a lapsing financing statement.

5. Section 70A–9–403(2) should not be read as though isolated from the rest of chapter 9.

6. Utah Code Ann. § 70A–9–307 is the analogous section protecting buyers of goods who buy in the ordinary course of business.

ing delivery of the collateral after [the creditor] perfected its security interest." *Branford*, 39 UCC Rep. at 1136 n. 3, 455 So.2d at 542 n. 3. (Emphasis added.) A similar result was reached in *United States v. Central Livestock Corp.*, 616 F.Supp. 629, 634 (D.Kan.1985). In *Central Livestock* the facts were virtually the same as the facts here except that the purchaser was a buyer of farm products in the ordinary course of business. The *Central Livestock* court read 9–301(1)(c), as governing the relative rights of the unperfected secured party and purchaser. That court found that an unperfected security interest is subordinate to a purchaser who complies with the requirements of 9–301(1)(c). Also, in *Broadway Nat'l Bank v. G. & L. Athletic Supplies*, 10 Kan.App.2d 43, 691 P.2d 400 (1984) a provision similar to Utah Code Ann. § 70A–9–403(2) [7] caused the creditor's security interest to become unperfected. The court then turned to 9–301(1)(c) to determine the priority of that unperfected interest as against a purchaser.[8] *Broadway*, 691 P.2d at 403.

Based upon the foregoing, Hansen's Motion for Summary Judgment is denied because genuine issues of material fact remain.[9]

This Memorandum Decision and Order will suffice as the court's final action on this motion; no further Order need be prepared by counsel.

---

**7.** Section 70A–9–103(1) (a), (d) (1953) deals with removal of collateral from one jurisdiction to another. There is a four month grace period following removal. "[T]he security interest becomes unperfected at the end of that period and is therefore *deemed to have been unperfected as against a person who became a purchaser* after removal." (emphasis added).

**8.** This court considers that the phrase "before it is perfected" in § 9–301 does not require a different result where a once perfected interest is "deemed to have been unperfected."

**9.** The first inquiry should center around the transaction in which Hansen paid over $100,000 to FmHA. Was payment made under circumstances which resulted in release of FmHA's claims and security interest? The next level of inquiry should be whether Hansen had knowledge of FmHA's security interest in the Collateral at the time of purchase.