[No. E014949. Fourth Dist., Div. Two. Mar. 23, 1995.]

TURBINATOR, INC., Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
U.S. WINDTRICITY, INC., et al., Real Parties in Interest.

COUNSEL

A. Peter Rausch, Jr., and Michael A. Fluetsch for Petitioner.

No appearance for Respondent.

Owens & Associates and Peter K. Owens for Real Parties in Interest.

OPINION

**HOLLENHORST, Acting P. J.**—In this matter we hold that a creditor whose security interest has lapsed retains priority rights against a subsequent purchaser which acquires its interest in the collateral with actual knowledge of the first creditor's interest. We therefore issue a writ commanding the trial court to grant petitioner's request for a preliminary injunction restraining real party from disposing of the collateral.

### FACTS AND HISTORY OF THE CASE

This action involves an effort by petitioner Turbinator, Inc., to gain possession of certain personal property in which, at one time at least, it held a secured interest. The collateral consists of a number of wind turbines given as security for a series of promissory notes originally executed by investor-purchasers of the wind turbines. These notes are in default.

At the time of the commencement of the action, the turbines were alleged to be in the possession of defendants and real parties U.S. Windtricity, Inc., and Clair Nordvik, the principal of Windtricity. (Hereinafter, jointly

Windtricity.) Windtricity gained its interest in the turbines long after the security interest was granted to Turbinator's original predecessor as beneficiary of the promissory notes. Accordingly, Turbinator sought a preliminary injunction against real parties to prevent the sale, transfer, or other disposition of the turbines pending resolution of the action.

Resisting this attempt, Windtricity showed that the security interests given to Turbinator's predecessor lapsed in 1990, *before* Windtricity acquired its interest in the collateral. Turbinator conceded that this was so, and does not now contend otherwise. Windtricity argued that it therefore acquired its interest in the collateral free of any prior right in Turbinator, although Windtricity, in turn, conceded that it had actual knowledge of the existence of the promissory notes, security agreements, and Turbinator's acquisition of an interest therein.

The trial court denied Turbinator's request for a preliminary injunction, stating that—although it disagreed with the reasoning and result—it felt itself bound by the decision in *Growth Properties* v. *Lempert* (1983) 144 Cal.App.3d 983 [193 Cal.Rptr. 102], which held, on essentially similar facts, that the original security interest became wholly ineffective upon statutory lapse.

Turbinator filed a notice of appeal and also sought relief by way of extraordinary writ. We determined to decide the matter on its merits through the writ petition, and issued an alternative writ of mandate as well as an order restraining disposition of the collateral pending our decision.

We now conclude that, although the trial court very properly recognized that the decision in *Growth Properties* was binding on it, that decision is in error. We do not follow it. Instead, we hold that Turbinator may have priority over Windtricity and is entitled to an injunction to protect and preserve the collateral.

## DISCUSSION

Insofar as it is relevant to this case, we will briefly describe the system by which a creditor may obtain a security interest in personal property pursuant to division 9 of the California Uniform Commercial Code, which is based upon the equivalent provisions of the Uniform Commercial Code. (See Cal. U. Com. Code, § 9101.)[1]

Division 9 applies to "any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or

---

[1]All subsequent statutory references are to the California Uniform Commercial Code.

accounts; . . . [¶] . . . [¶] . . . to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, inventory lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract and lease or consignment intended as security." (§ 9102, subds. (1)(a), (2).) In the absence of a contrary agreement, a security interest attaches when three requirements are met: the collateral is in the possession of the creditor *or* the debtor has signed a security agreement describing the collateral, the creditor has given value, and the debtor has rights in the collateral. (§ 9203, subds. (1), (2).)

However, a security interest which is merely "attached" is subject to displacement by later interests unless it is "perfected." Thus, pursuant to section 9301, an *unperfected* security interest is "subordinate to the rights of . . . in the case of goods . . . a person who is not a secured party and who is a transferee in bulk or other buyer not in the ordinary course of business[2] to the extent that he gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected." Furthermore, section 9312, subdivision (5)(a) provides that in cases not otherwise covered, "Conflicting security interests rank according to priority in time of filing or perfection." Subdivision (5)(b) provides that "So long as conflicting security interests are unperfected, the first to attach has priority." By these means perfection is encouraged, because although an unperfected interest may be enforceable against the original debtor and some transferees, it is at risk of involuntary subordination to new interests.

In the usual case, perfection is accomplished by filing a financing statement in the office of the county recorder in the county of the debtor's residence. (§§ 9401, subd. (1), 9402.) However, such a filing *lapses* after five years, unless a "continuation statement" is filed according to specified conditions. (§ 9403, subds. (2), (3).) No such continuation statement was filed here, and the statements filed by Turbinator's predecessor lapsed before Windtricity acquired the turbines.

■ The question before us is whether "lapsed" means "null and void." The court in *Growth Properties* held that this was the effect of lapse. We disagree. To explain why, we turn to a closer examination of sections 9403 and 9301.

Section 9403, as discussed above, provides that a financing statement is no longer effective after five years, unless a "continuation statement" is filed to extend the period of effectiveness. According to the statute, upon lapse of

[2]It is also undisputed that Windtricity did not acquire the turbines in the ordinary course of the predecessor's business.

the financing statement, the security interest which it reflects becomes *unperfected.* (*Id.,* subd. (2).) Furthermore, "If the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse." (*Ibid.*) This simply clarifies that *all* subsequent creditors or takers are entitled to the benefits entailed in lapse.[3]

In *Growth Properties, supra,* the debtor sold his interest in the secured property while the financing statement was still effective; however, when the financing statement lapsed, the clause of section 9403, subdivision (2) quoted immediately above went into effect and the creditor's secured interest became retroactively unperfected as against the transferee. The purchaser was aware of the prior security interest.

The court recognized that under section 9301, subdivision (1)(c), a buyer not in the ordinary course of business who takes *with knowledge* of an *unperfected* existing security interest remains subordinate to that interest. However, it observed that section 9403—dealing with lapse—does not discuss the element of *scienter* in describing the effect of a financing statement's expiration. The court cited general scholarly comments to the effect that "the element of notice has been of little importance in determining priority under article 9." (144 Cal.App.3d at p. 989, discussing Pearson, *Absolute versus Conditional Protection for Secured Parties: Problems of Lapsed Perfection Under Article 9 of the Uniform Commercial Code* (1979) 17 Hous. L.Rev. 1, 24-25.) Accordingly, the court concluded that the Code focused on the necessity for creditors to exercise a high level of diligence in monitoring their security and keeping their interests perfected; accordingly, it disregarded the issue of the buyer's knowledge of the creditor's prior interest in that case. (144 Cal.App.3d at pp. 989-990.)

We point out that Windtricity is technically *not* covered by the specific portion of section 9403 discussed in *Growth Properties,* because Windtricity became a purchaser *after* lapse while the statute defines the effect of lapse on a purchaser *before* lapse. Thus, the absence of qualifying language (e.g., concerning the purchaser's knowledge) does not directly affect this case. However, we proceed to analyze the result in *Growth Properties* because the language of that decision appears broad enough to govern lapsed interests in general.

---

[3]It must be noted that a "purchaser" under this provision includes not merely buyers, but also any taker by "mortgage, pledge, lien . . . or any other voluntary transaction creating an interest in property." (§ 1201, subds. (30), (31).) Thus, the lapsed interest becomes unperfected against subsequent secured creditors as well as against buyers. (See com. 3 of off. com. on U. Com. Code, Deering's Ann. Cal. U. Com. Code (1986) foll. § 9403, p. 541.)

An alternative explanation for the failure of section 9403 to provide for the effect *vel non* of knowledge of a prior interest, apart from that cited in *Growth Properties*, is that this section is simply not primarily concerned with setting priorities. Section 9403 establishes the duration of effectiveness of a financing statement, the manner of extension, and the effect of lapse. In the latter context it makes clear that when a financing statement lapses and the security interest thereby becomes unperfected, such unperfection is retroactive as against purchasers and lien creditors. However, this does not purport to establish a general system of priority; it merely notes the effect of lapse.

On the other hand, sections 9301 and 9312 *do* explicitly deal with priorities. We agree with those authorities which hold that these statutes control disputes over priority.

Thus, in *U.S.* v. *Currituck Grain, Inc.* (4th Cir. 1993) 6 F.3d 200, the court first determined that the secured creditor's interest had lapsed and had become unperfected against a subsequent purchaser, applying the retroactivity provisions of section 9403.[4] It then observed that "none of the foregoing provisions"—including section 9403—"determines the relative priorities . . . following the lapse and relating back of [the secured creditor's] unperfected security interest." (6 F.3d at p. 204.) The court then turned to section 9301 to reach the conclusion that the subsequent purchaser, having given value and acting without knowledge of the prior interest, moved to a position of priority after lapse. Similar is *United States* v. *Handy & Harman* (9th Cir. 1984) 750 F.2d 777, in which the court, after determining that a security interest had lapsed under section 9103,[5] turned to section 9301 to determine priorities. (See also *Banque Worms* v. *Davis Const. Co., Inc.* (Ky.Ct.App. 1992) 831 S.W.2d 921, 925.)

The court in *Growth Properties* failed to appreciate the precise effect of the lapse of a financing statement under section 9403. It becomes *unperfected*, but this is not the same as *void* or *ineffective*.

■ The failure to perfect a security interest does not nullify that interest. (*Freeman* v. *Bentley* (1992) 205 Ga.App. 409, 412 [422 S.E.2d 435, 436].)

---

[4]*Currituck* arose under North Carolina law. However, North Carolina has also adopted the Uniform Commercial Code and its version of section 9403 is identical to that of California. It is generally recognized that uniformity in construction of the code provisions in the various states is highly desirable, and that decisions from other states constitute strong persuasive authority. (*Chicago Title Ins. Co.* v. *California Canadian Bank* (1991) 1 Cal.App.4th 798, 812 [2 Cal.Rptr.2d 422]; *Bank of America* v. *Security Pacific Bank* (1972) 23 Cal.App.3d 638, 643 [100 Cal.Rptr. 438].)

[5]Section 9103 is similar in effect to section 9403. It provides that a security interest lapses when the collateral is removed to another state unless it is perfected in the new state within a specified period. If a formerly perfected security interest becomes unperfected under the statute, it is unperfected retroactively "as against a person who became a purchaser after removal."

Under section 9201, "Except as otherwise provided by this code a security agreement is effective according to its terms between the parties, *against purchasers of the collateral* and against creditors." (Italics added.) This statute contains no requirement of perfection. As the Uniform Commercial Code comment indicates, the "section states the general validity of a security agreement . . . Exceptions to this general rule arise where there is a specific provision . . . for example, where . . . this Article *subordinates the security interest because it has not been perfected (see Section 9-301 [9301]) or for other reasons (see Section 9-312 [9312] on priorities)* . . . ." (3 West's U. Laws Ann. (1992) U. Com. Code, § 9-201, off. com., p. 358.) Thus, an unperfected security interest is enforceable against all parties *unless* the holder of a later-acquired interest qualifies under some other provision of the Code. The unperfected interest is *not* null and void. For example, an unperfected security interest will defeat the interest of an unsecured general creditor. (*United States Shoe Corp.* v. *Cudmore-Neiber Shoe Co.* (D.C.S.D. 1976) 419 F.Supp. 135, 137-138.) The only requirements for validity are those set out in section 9203: a signed agreement, value given, and the debtor's rights in the collateral. Once these are met, an enforceable security interest exists. (*New West Fruit Corp.* v. *Coastal Berry Corp.* (1991) 1 Cal.App.4th 92, 97 [11 Cal.Rptr.2d 664].) "[A] failure to file a financing statement [does] not affect the validity of [a] security agreement. While the filing of a financing statement is an additional step that would have perfected [the creditor's] interest and given [the creditor] priority against other creditors in respect to the goods described in the security agreement, filing is not necessary to create the security interest itself." (*Raleigh Industries of America, Inc.* v. *Tassone* (1977) 74 Cal.App.3d 692, 698 [141 Cal.Rptr. 641].) The purpose of perfection is simply "to make [the security interest] safe against creditors and transferees of the debtor." (3 Witkin, Summary of Cal. Law (1987) Secured Transactions in Personal Property, § 35, p. 460.)

 Thus, while the perfection of the security interests in favor of Turbinator's predecessor lapsed in 1990, the security interests themselves remained valid and enforceable—*except as to creditors or purchasers satisfying an exception to the enforceability rule.*

In our view, as in that expressed by the courts in *Currituck, Handy & Harman*, and *Banque Worms*, it is sections 9301 and 9312 that hold the key to determining priority among two interests, each *valid* but one of which must be *subordinate* to the other. The court in *Growth Properties* erred in believing that because section 9403, subdivision (2) does not speak in terms of knowledge or *scienter*, this factor is irrelevant.

Probably the majority of disputes under the Uniform Commercial Code involve competing secured interests. Priority among such interests is governed in detail by section 9312. Under that statute, a secured creditor whose

interest is *perfected* is automatically superior to any creditor holding an unperfected interest. (§ 9312, subd. (5)(a).) Thus, any perfected interest will prevail over the lapsed interest, and this result is clear from section 9312 and need not be explained in section 9403. Section 9312 also governs priority between unperfected interests, and therefore controls when a lapsed interest becomes unperfected as a matter of law and is disputing priority with another unperfected interest.

Section 9301 has a scope at once broader and narrower than section 9312; it governs only unperfected interests, but rates them against claimants other than holders of other security interests.[6] Under subdivision (1)(b), lien creditors who acquire that status "before the security interest is perfected" enjoy priority. So do buyers—"transferees"—not in the ordinary course of business, who give value and take *without knowledge*. (§ 9301, subd. (1)(c).)[7]

Read in connection with section 9403, we think the statutory scheme is clear. Section 9403 explains that as to lien creditors and purchasers, a lapsed financing statement has the effect of making the prior interest unperfected even though it *was* perfected when the subsequent interests were acquired or created. If it were not for this provision, the statute would be ambiguous as to such interests. Section 9403 clarifies that a lapsed statement is deemed unperfected as to *all* subsequent interests, not merely those created or acquired after lapse. However, it does not purport to establish priorities. That is left to sections 9301 and 9312.

The fact that a subsequent buyer seeking to establish priority over an unperfected prior security interest under section 9301 must establish lack of actual knowledge of the interest appears never to have been disputed and has been widely noted. (See *Banque Worms* v. *Davis Const. Co., Inc., supra*, 831 S.W.2d 921; *Chase Manhattan* v. *J & L General Contr.* (Tex.Ct.App. 1992) 832 S.W.2d 204, 212.) The statute's distinctions have also been recognized —for example, that subdivision (1)(b), which gives priority to a lien creditor who acquires that status before the earlier interest is perfected, does *not* require good faith or a lack of knowledge of the prior interest. (See *In re Hilyard Drilling Co., Inc.* (8th Cir. 1988) 840 F.2d 596, 600.)

It is quite true, as the court in *Growth Properties* observed, that the Uniform Commercial Code's general goal is " '*in most instances*, to resolve

---

[6]Section 9301 expressly incorporates the priority rules of section 9312 insofar as the latter section applies.

[7]Compare the specific term "transferees" in section 9301 with the broader "purchasers" in section 9403. Section 9312 describes how a creditor-"purchaser" may obtain priority over the lapsed lien—by perfection. Section 9301 describes how the buyer-"purchaser" obtains the same priority over an unperfected lien—by having given value and taken without knowledge.

notice disputes consistently and predictably by reference to constructive or statutory notice alone . . . consideration of a junior creditor's actual notice of a now lapsed prior filing by a competing senior creditor is precluded.' " (*In re Hilyard Drilling Co., Inc., supra*, 840 F.2d at p. 600, italics added.) But as the stressed language concedes, there *are* exceptions and one of them applies to subsequent transferees. Under the clear language of section 9301, subdivision (1)(c), a *buyer's* actual knowledge of the prior unperfected interest prevents him from gaining priority over it.

An argument can be made that the Legislature (and the drafters of the Uniform Commercial Code) intended that purchasers of collateral as to which a security interest has *not yet* been perfected should be treated more restrictively than those who purchase collateral as to which a security interest *has been* perfected, but then lapses. However, we have searched the statutes and comments in vain for any indication of such an intent; nor can we see any logical basis for such a distinction. It is true that once a financing statement lapses, it can never be reinstated (see *In re Hilyard Drilling Co., Inc., supra*) but we do not deem this significant. As noted above, section 9403 only makes a lapsed interest "unperfected"; it does not relegate such an interest to any uniquely inferior status based upon its unperfectable character.

■ Windtricity argues that section 9301, insofar as it deals with purchasers, is designed only to prevent the fraudulent "quick sale" by which a colluding seller and buyer consummate a sale of the collateral after the security interest attaches, but before the creditor has managed to perfect it. We agree that this situation is one covered by the statute and that it is also a situation which is reasonably addressed. However, we note that many commercial creditors are *otherwise* protected from a "quick sale" defeat of their rights by subdivision (2) of section 9301. That subdivision provides that if the creditor holding a *purchase money*[8] security interest perfects it within 20 days,[9] the interest retains priority over *any* transferee in bulk or lien creditor whose interest arose or was acquired after the security interest attached.[10] The existence of this specific protection against the collusive "quick sale" in derogation of the secured creditor's rights causes us to doubt that the proviso requiring a purchaser generally to show lack of knowledge was intended redundantly to accomplish a similar effect.

---

[8]Section 9107 broadly defines " 'purchase money security interest' " to include not only a seller's lien, but also an interest securing advances which enable the debtor to purchase the collateral from a third party. It thus covers a large number of commercial financing arrangements.

[9]Formerly 10 days, as applicable until 1993 when the period was expanded by amendment.

[10]Section 9312, subdivision (4) sets out a similar rule preserving priority against subsequent *creditors*, consistent with that section's focus on priorities among secured interests.

 Windtricity also argues that Turbinator's interpretation would make a lapsed filing statement valid *in perpetuo* simply because the filed statement would remain to give constructive notice to later creditors or purchasers. The contention is without merit. Although section 9301 speaks only of "knowledge" in describing the circumstances which will prevent a subsequent buyer from obtaining priority, the Commercial Code defines "knowledge" as *actual* knowledge. (§ 1201, subd. (25)(c).) "The good faith of a buyer is therefore to be determined by what he actually knew, rather than what a reasonable man should have known from all the circumstances." (*Louis & Diederich, Inc.* v. *Cambridge European Imports, Inc.* (1987) 189 Cal.App.3d 1574, 1587 [234 Cal.Rptr. 889].) Acting in accordance with section 9403, a purchaser need only search the records for five years back before being satisfied that no perfected security interest exists; if he then stops his search (as any sensible purchaser will do), he will not have actual knowledge of any lapsed interest and will be entitled to priority under section 9301. Furthermore, section 9403.1 allows a recording officer to destroy indices of financing statements after six years, thus making the "inadvertent" acquisition of actual knowledge less likely. Finally, as Turbinator points out, the mere existence of a filed, lapsed financing statement does not provide actual knowledge of an *unsatisfied* debt, because although the statutes permit the filing of a "termination statement" when the debt is satisfied (§ 9404), there is no requirement that the creditor do so unless a demand is made.[11] Thus, a financing statement may remain of record long after the debt has been satisfied, and its mere existence of record proves nothing.

 Windtricity's basic complaint is that the lapse provisions essentially do not help it at all if Turbinator's interpretation is correct. However, the plain fact is that the Uniform Commercial Code simply does not treat transferees in the same manner that it treats creditors. As we have explained, under sections 9301 and 9312, an unperfected security interest is defeated by a subsequent perfected interest or subsequent lien creditor, with knowledge irrelevant; the same is simply not true of the subsequent buyer.

Nor can we say that the treatment of purchasers is arbitrary or unreasonable. After all, a purchaser which is actually aware of a prior secured interest can protect itself by negotiating for a price which takes the secured interest into account, or by demanding that the interest be paid off by the seller.[12] In this case, Windtricity acquired the turbines with actual knowledge of the

---

[11] According to the official comment, the five-year lapse provision is intended to serve a "clean-up" function with respect to satisfied obligations. The comment also expressly observes that "a person searching the files need not go back past this five years plus one year."

[12] By contrast, a subsequent lender is concerned only with the eventual payment of the debt, not the net value of the collateral.

existence of a security interest. Possibly it believed, due to the lapse of time since the debt matured, that the creditor had abandoned any intent to seek payment. Possibly it took an erroneous view of the effect of a secured interest which has become unperfected by operation of law. We also recognize that Windtricity may have relied upon *Growth Properties*, although it would have been wiser to have evaluated that decision in light of out-of-state authority. However, as a general rule the point is that it is up to the buyer, during negotiations, to deal with the risk of loss from an unexpected attempt to enforce a known security interest.

Turbinator has established its right to a preliminary injunction; it has shown a substantial risk of harm if the turbines are lost, and it has established a probability of success on the merits. (*Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 286 [219 Cal.Rptr. 467, 707 P.2d 840].) Although we are unable to say that the trial court abused its discretion in following applicable precedent, we nevertheless hold that it erred.

The alternative writ, having served its purpose, is discharged. Let a peremptory writ of mandate issue, directing the superior court to issue the preliminary injunction as prayed.

Petitioner shall recover its costs.

McKinster, J., and McDaniel, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.