### In re PAYLESS CASHWAYS, INC., Debtor.

#### No. 01–42643.

United States Bankruptcy Court, W.D. Missouri.

Jan. 25, 2002.

Paul D. Sinclair, Sinclair Sawyer Thompson Haynes Cowing, Kansas City, MO, for Creditor.

Kathryn B. Bussing, Esq., Richard Beheler, Esq., Blackwell Sanders Peper Martin, Kansas City, MO, for Debtor.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

Creditor Winthrop Resources Corporation (Winthrop) filed a Motion for Adequate Protection or, in the Alternative, for Relief from the Automatic Stay in this Chapter 11 bankruptcy case. Debtor Payless Cashways, Inc. (Payless) responded that Winthrop did not property perfect its lien, therefore, it is not entitled to adequate protection. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## ISSUE PRESENTED

The Uniform Commercial Code allows a secured creditor to file a financing statement to perfect a future security interest whenever the security interest attaches. Winthrop filed financing statements in both Texas and Missouri three years prior to Payless granting it a security interest in computer equipment. Did the previously filed financing statements serve to perfect Winthrop's security interest?

## DECISION

■ The purpose of filing a financing statement is to give notice to a third party to make further inquiry as to specific collateral. If a financing statement is filed in the right place and correctly identifies the debtor, the secured party, and the collateral, a prudent third party has notice and the financing statement is sufficient to perfect a future security interest.

## FACTUAL BACKGROUND

The facts are not disputed here. On November 6, 1997, Winthrop and Payless executed what they both agree was a true lease for computer equipment. Prior to the execution of the lease, on April 28, 1997, and May 7, 1997, Winthrop filed UCC–1 lease financing statements in the State of Texas covering the same computer equipment. On February 10, 1998, Winthrop filed other UCC–1 lease financing statements with the Missouri and Texas Secretaries of State, and on April 23, 1998, Winthrop filed a UCC–1 lease financing statement with the Jackson County, Missouri Recorder of Deeds. On February 23, 2001, Payless and Winthrop entered into an Equipment Sales Agreement whereby Payless agreed to purchase the computer equipment that was subject to the November 6, 1997, lease for the sum of $234,000, payable over twelve months at $20,989.53 per month. On April 23, 2001, Winthrop filed UCC–1 financing statements in Missouri and Texas. On June 4, 2001, Payless filed this Chapter 11 bankruptcy petition. Payless has made no post-petition payments to Winthrop. Based upon that default, and the fact that Payless was continuing to use the equipment, Winthrop moved this Court for adequate protection of its collateral. Payless responded that Winthrop is not entitled to adequate protection, since it failed to perfect its security interest within 20 days, therefore, the filing of the financing statement on April 23, 2001, was a preferential transfer. Winthrop countered that the UCC–1 lease financing statements served to perfect its security interest in the computer equipment. The parties agree that the only issue before the Court is whether the UCC–1 lease financing statements filed in 1997 and 1998 served to perfect Winthrop's security interest in the computer equipment at the time of the Equipment Sales Agreement. If the Court finds that Winthrop has a perfected security interest in the computer equipment, the parties agree that Winthrop is entitled to a priority administrative expense claim in the amount of $20,989.53 per month, pursuant to 11 U.S.C. § 507(a)(1), from June 4, 2001, until such time as Payless physically tenders the computer equipment for redelivery to Winthrop.

## DISCUSSION

The Uniform Commercial Code (the UCC) controls my decision in this matter. The purpose of the UCC is to simplify, clarify, and modernize the law governing commercial transactions.[1] The matter before me is a commercial transaction, and I look to Article 9 of the UCC for guidance. I note that both Texas and Missouri have adopted revised Article 9, which became effective on July 31, 2001. The parties executed the transaction at issue here, however, prior to that date, so all references will be to the version of Article 9 in effect in both Texas and Missouri before the revision, except where noted. Since the dispositive issue is whether Winthrop properly perfected its security interest in the computer equipment, I begin with the purpose of perfection. A creditor perfects a security interest in computer equipment by filing a financing statement in the Office of the Secretary of State in order to give notice to, and assure priority over, other creditors and interested third parties with respect to goods described in a se-

---

1. Mo. Stat. Ann. 400.1–102(2)(a) (1994); Tex. Bus. & Com.Code Ann. § 1.102(2)(a) (1991); *Robinson v. Citicorp Nat'l Serv., Inc.,* 921 S.W.2d 52, 54 (Mo.Ct.App.1996) (stating that the purpose of the UCC is to eliminate uncertainty by providing plain and certain rules of law).

curity agreement.[2] That notice protects the rights of the secured party against the claims of other creditors of the debtor.[3] The financing statement must contain the names and addresses of the debtor and the secured party, be signed by the debtor, and contain a description of the collateral:

> (1) A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.[4]

Moreover, a creditor may file a financing statement in advance of entering into a security agreement, provided the statement has been signed by the debtor:

> A financing statement may be filed before a security agreement is made or a security interest otherwise attaches.[5]

In fact, the Comment to the UCC states that "the financing statement is effective to encompass transactions under a security agreement not in existence and not contemplated at the time the notice was filed, if the description of collateral in the financing statement is broad enough to encompass them."[6] A security interest attaches when the debtor has signed a security agreement containing a description of the collateral, there is consideration, and the debtor has obtained rights to the collateral:

> (1) ..., a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:
>
> > (a) the collateral is in the possession of the secured party pursuant to agreement, ... or the debtor has signed a security agreement which contains a description of the collateral ...;
> >
> > (b) value has been given; and
> >
> > (c) the debtor has rights in the collateral.[7]

Thus, a security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. In the case at hand, Winthrop filed UCC–1 financing statements with the Texas Secretary of State on April 28, 1997, May 7, 1997, and February 10, 1998.[8] The financing statements are signed on behalf of Payless, they contain the name and address of both Payless and Winthrop, and

---

2. *Goehring v. Superior Court*, 62 Cal.App.4th 894, 907, 73 Cal.Rptr.2d 105, 113 (1998);

3. *Id. citing Turbinator, Inc. v. Superior Court*, 33 Cal.App.4th 443, 451, 39 Cal.Rptr.2d 342 (1995).

4. Mo. Stat. Ann. § 400.9–402(1) (1994); Tex. Bus. & Com.Code Ann. 9.402(b)(1) (Vernon's 1999). I note that Revised Article 9, which became effective on July 31, 2001, provides that a security interest sufficiently provides the name of the debtor, if it provides the name of the debtor indicated on the public record where the debtor was organized. Mo. Stat. Ann. § 400.9–503(a)(1). The Official Comment 2 to that section instructs that financing statements are indexed under the debtor's name, and those who wish to find financing statements search for them under the debtor's name.

5. *Id.*

6. *Id.* at Comment 2.

7. Mo. Stat. Ann. § 400.9–203(1) (Supp.2001); Tex. Bus. & Com.Code Ann. § 9.203(1) (Vernon 1999).

8. Cr. Ex. # 3 (The date of the May filing is corrected to May 7, 1999, pursuant to Winthrop's Amendment to Memorandum of Law in Support of Creditor's Motion for Adequate Protection or, in the Alternative, for Relief from the Automatic Stay).

they contain an "Attached Schedule A," which is a list of equipment identified by manufacturer, quantity, machine/model number, equipment description, and serial number.[9] On February 10, 1998, Winthrop also filed a UCC–1 financing statement with the Missouri Secretary of State, and on April 23, 1998, Winthrop filed a UCC–1 financing statement with the Jackson County, Missouri Recorder of Deeds.[10] Those financing statements are also signed on behalf of Payless, contain the name and address of both Payless and Winthrop, and contain an "Attached Schedule A," which identifies certain items of collateral by manufacturer, quantity, machine/model number, equipment description, and serial number.[11] I find, therefore, that the financing statements on file in both Missouri and Texas conform in all ways to the requirements of the UCC. And the UCC permits such filing in advance of a security interest, or in this case, as a precaution in the event a third party challenged the characterization of the lease as a "true lease."[12] Despite the motivation for filing the UCC–1's, Winthrop filed the financing statements in compliance with the UCC, and they were effective on February 23, 2001, when Winthrop and Payless executed the Equipment Sales Agreement (the Agreement).[13] As to the Agreement, it is signed on behalf of both Payless and Winthrop, it nullifies the lease agreement, it transfers title in the computer equipment to Payless upon payment of the purchase price, it sets forth the purchase price and payment terms, it grants Winthrop a security interest in the collateral, and it identifies the collateral subject to the sale as being the equipment in Payless' physical possession on February 23, 2001.[14] I, therefore, find that the security interest both attached on that date, and because of the precautionary UCC–1 on file, it became perfected on that date.

As such, Winthrop had a validly perfected security interest in the computer equipment on June 4, 2001, when Payless filed this chapter 11 bankruptcy case. I will, therefore grant Winthrop's motion for a priority administrative claim in the amount of $20,989.53 per month until such time as the computer equipment is physically tendered for redelivery to Winthrop.

▪ Payless argues vigorously that any financing statement filed as a precaution before Payless filed its first Chapter 11 bankruptcy petition was eliminated when this Court confirmed its Chapter 11 Plan of Reorganization on November 19,

9. *Id* at Attachment A.

10. Cr. Ex. ## 5 and 6.

11. *Id.* at Attachment A.

12. *See* Mo. Stat. Ann. § 400.9–408 (1994) and Tex. Bus. & Com.Code Ann. § 9.408 (1991) Comment 2 (stating that if a lease is intended as security, Article 9 applies in full. If, however, the lessor chooses to file for safety even while contending that the lease is a true lease, section 9–409 authorizes filing with appropriate changes of terminology, and without affecting the question of classification). *See also* Mo. Stat. Ann. § 400.9–409 (1994) and Tex. Bus. & Com.Code § 9.408 (1991), which specifically state that a lessor may file a financing statement using the term lessor, and if the lease is ever determined to be a security interest, it is perfected by the filing. That is not relevant here as the filing in this case perfected the later security interest at the time the security interest attached. Again I note that Revised Article 9 also allows a lessor to file a precautionary financing statement that will perfect a lessors' interest in the event it is determined to be a security interest and not a true lease. Mo. Stat. Ann. § 400.9–505 (Supp.2002); Tex. Bus. & Com.Code Ann. § 9.505 (Vernon 2002).

13. Cr. Ex. # 2.

14. *Id.*

1997.[15] Even if I were to accept this argument, which I do not, according to the exhibits submitted by stipulation of the parties, on February 10, 1998, Winthrop filed another UCC–1 financing statement with the Texas Secretary of State,[16] and on April 23, 1998, Winthrop filed UCC–1 financing statements with the Missouri Secretary of State and with the Jackson County, Missouri Recorder of Deeds.[17] Thus the Order of Confirmation did not have any effect on these filings. Payless also argues that the reorganized debtor was not the same entity as the pre-petition Payless, therefore, the financing statements were seriously misleading. A financing statement is seriously misleading, and does not serve to perfect a lien, if a third party could not discern from the face of the financing statement a means to locate the debtor and secured creditor to make further inquiry.[18] The financing statements in this case adequately provide that information. Payless does not cite any authority for its interpretation of seriously misleading, however, the argument is irrelevant, as Winthrop filed post-confirmation financing statements that correctly identified the "Reorganized Payless." And I note that there is no recognizable change in the name or designation of the reorganized entity. It was then, and is now, known as Payless Cashways, Inc.

Canadian Imperial Bank of Commerce (CIBC) filed a response to Winthrop's motion alleging a prior security interest based an after acquired property clause in the security interest it executed with Payless at the time of confirmation. Winthrop filed a motion to strike the response as being filed out of time. Having reviewed CIBC's argument, and based upon the reasoning above, I find that Winthrop's security interest is a purchase money security interest, and it takes priority over CIBC's alleged security interest in all of Payless' after acquired equipment. A purchase money security interest is a security interest that is retained by the seller of collateral to secure all or part of the purchase price.[19] The UCC provides that a "purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within twenty days thereafter."[20] Because Winthrop filed its financing statement in advance of the purchase sales agreement, I find that the security interest was perfected upon execution. I will, therefore, overrule CIBC's objection.

An Order in accordance with this Memorandum Opinion will be entered this date.

---

**15.** Case No. 97–50543, Doc. # 858.

**16.** Cr. Ex. # 3.

**17.** Cr. Ex. ## 5 and 6.

**18.** *General Electric Credit Corporation v. Aurora Mobile Homes, Inc.*, 37 Cal.App.3d 1016, 1022, 112 Cal.Rptr. 735, 739 (1974).

**19.** *First Nat'l Bank of Steeleville, N.A. v. Erb Equipment Co., Inc.*, 921 S.W.2d 57, 61 (Mo. Ct.App.1996).

**20.** Mo. Stat. Ann. § 400.9–312(4) (1994); Tex. Bus. & Com.Code Ann. § 9.312(4) (1991).