Filed 8/26/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JACQUELINE B., | B308815 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV00329) |
| v. | |
| RAWLS LAW GROUP, P.C., et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Yolanda Orozco, Judge.  Affirmed.

Law Office of David Feldman and David Feldman for Plaintiff and Appellant.

Nemecek & Cole, Michael McCarthy, Vikram Sohal, and Mark Schaeffer for Defendants and Respondents.

\* \* \* \* \* \*

The State of California may exert specific personal jurisdiction over an out-of-state defendant with respect to a particular lawsuit only if (1) the defendant has purposefully availed itself of the benefits of California as a forum, (2) the controversy giving rise to the lawsuit is related to or arises out of the defendant's contacts with California, and (3) the assertion of personal jurisdiction would comport with fair play and substantial justice. (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269 (*Pavlovich*).) In this case, a person with a federal tort claim arising out of injuries suffered in California retained a Virginia-based law firm with Virginia-licensed lawyers to represent her in negotiating a settlement with the pertinent federal agency's lawyers in Arizona. Can California exert specific jurisdiction over the firm and its lawyers if the person sues them for malpractice? We conclude that the answer is no, and do so because (1) the law firm and its lawyers did nothing to purposefully avail themselves of the benefits of doing business in California, and (2) the allegedly bad advice underlying the malpractice lawsuit was not sufficiently related to the firm's and its lawyers' contacts with California. Accordingly, we affirm the trial court's order quashing service of summons on these defendants and dismissing the client's malpractice suit.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

#### A.     *Plaintiff suffers abuse*

Jacqueline B. (plaintiff) is a veteran of the United States armed forces.

In 2015 and 2016, plaintiff sought services from the United States Department of Veterans Affairs (VA) at the West Los

2

Angeles facility. Specifically, she participated in the Domiciliary Residential Rehabilitation Treatment Program under the care of a VA social worker. The social worker initiated and pursued a sexual relationship with plaintiff while plaintiff was her patient; VA officials later concluded that the social worker's actions constituted "profound patient abuse."

Plaintiff was living in California at the time of this abuse, as she had been, on-and-off, since 1999.

### B. *Plaintiff files an administrative claim*

In August 2016, and while still living in California, plaintiff filed a report with the VA complaining about the social worker. The VA had investigated the report, and concluded that it had merit.

On February 10, 2017, and while still living in California, plaintiff filed a claim under the Federal Tort Claims Act with the VA seeking $3 million in damages for the sexual and emotional abuse inflicted by the social worker.

The VA assigned an attorney in its Office of General Counsel located in Phoenix, Arizona to handle plaintiff's claim. On August 10, 2017, that attorney offered to settle plaintiff's possible federal tort claim for $125,000.

### C. *Plaintiff seeks out and retains the Rawls Law Group to exhaust her administrative claim and possibly pursue a lawsuit*

#### 1. *Plaintiff finds the Rawls Law Group online*

In the summer of 2017, plaintiff searched online for lawyers who might assist her with her administrative claim and, if necessary, with filing a Federal Torts Claim Act lawsuit. One of her search queries led her to the website for the Rawls Law Group, P.C. (the firm).

3

The firm is a Virginia-based corporation with all of its offices located in Virginia. Its founder and lead partner is Brewster S. Rawls (the partner), and one of its associates at the time was Rachel P. Maryan (the associate). The partner and associate were both licensed to practice law in Virginia, but not in California; the partner had appeared in federal court in California four times over his career, and the associate had appeared in federal court in California once.

In 2017, the firm's website stated that the firm has a "nationwide" practice that handled Federal Tort Claims Act cases all over the country, and listed several examples of cases that had resolved favorably to the firm's clients. Two of the examples involved settlements in cases arising out of claims against California-based VA facilities. The website listed the firm's toll-free number (i.e., 877-VET-4-VET) and had a "Reach Out" form that could be filled out and submitted to the firm from the website.

Based on what she read on its website, plaintiff contacted the firm. Plaintiff stated that she used a "live chat" function on the website. During a follow-up call with the associate, plaintiff stated that her claim involved injuries she suffered in California and that her claim was in the midst of being administratively exhausted with an attorney in Phoenix. The evidence is disputed as to whether the associate told plaintiff that the firm would file a lawsuit in federal court in California if the case did not settle in the course of administrative exhaustion: Plaintiff said this representation was made; the associate denied it and the partner denied having made any decision "on the venue of a future lawsuit."

On September 8, 2017, the firm sent plaintiff a letter with several enclosed documents, including a proposed retainer agreement, release forms to obtain her medical records from the VA, and an email communications consent form. The letter was sent to a P.O. box in California. In the letter, the firm said that it "would be pleased to represent [plaintiff] in a Federal Tort Claim against the Department of Veterans Affairs, arising out of [her] interactions with a social worker . . . at the West Los Angeles VA Medical Center."

2.     *Plaintiff retains the firm*

On September 11, 2017, plaintiff signed the agreement retaining the firm to "represent [her] in a potential claim for damages under the Federal Tort Claims Act," and faxed it to the firm the next day. The retainer agreement expressly contemplated settlement prior to the filing of any lawsuit because it (1) set forth two different contingency fees for the firm, one if the case settled before filing a lawsuit (at 20 percent) and one if it did not (at 25 percent), and (2) authorized the firm to "decline to continue to prosecute [plaintiff's] case" if it "later conclude[d] that the matter does not warrant filing a lawsuit." The agreement also emphasized that the firm "is a Virginia-based law firm," specified that the agreement was "subject to" Virginia law, and authorized the firm, at its discretion, to associate or "refer the case" to other counsel.

**D.     *The firm settles plaintiff's claim while she is away from California for several months***

On the day she faxed the retainer agreement to the firm, plaintiff left California. Both the partner and the associate were aware of plaintiff's departure, and given the open-ended nature of that departure, believed that plaintiff was no longer based in

5

California and was instead living a "transient lifestyle." On September 19, 2017, the firm conducted a due diligence search on plaintiff, and the search indicated that her "primary residence" was in Houston, Texas.

Between mid-September 2017 and early November 2017, the firm negotiated plaintiff's pending administrative claim with the Phoenix-based lawyer representing the VA. During this period, plaintiff was never in California; instead, she stayed with family and friends in Texas, Alabama, and Virginia. Also during this period, no one from the firm traveled to California to conduct any investigation, met anyone in California, or conferred with any attorneys in California. The associate made one phone call in September 2017 to one of plaintiff's private treatment providers in California to determine whether that provider's outstanding bill could be recovered as part of a possible settlement with the VA. On November 3, 2017, the firm secured a $200,000 settlement offer from the Phoenix-based VA lawyer. The firm mailed the offer to plaintiff's then-current address in Virginia, and recommended that she accept the offer on the ground that her noneconomic damages would be capped at $250,000 under the California law that would apply in any future lawsuit filed in federal court in California.

On November 8, 2017, plaintiff met with the partner and associate at the firm's Richmond, Virginia office to sign the settlement agreement.

A month later, the firm mailed the settlement check to plaintiff at the same Virginia address to which they mailed the settlement offer.

In May 2018, plaintiff made a post to her Facebook profile "[t]hank[ing]" the firm, the partner and the associate "who cared

6

enough about this case" and proclaiming that it was "[w]ell worth the 3,100 mile drive to Richmond . . . ."

## II. Procedural Background

On January 6, 2020, plaintiff sued the firm, the partner, and the associate (collectively, defendants) for (1) legal malpractice, (2) breach of contract, and (3) breach of fiduciary duty. Specifically, plaintiff alleged that defendants gave her bad advice to settle because California's $250,000 cap would *not* have applied to her noneconomic damages.

On March 4, 2020, defendants moved to quash service of summons for lack of personal jurisdiction. Following briefing that was accompanied by declarations and other evidence as well as a hearing, the trial court issued an 11-page order granting the motion to quash. The court cited two reasons. First, the court ruled that defendants had not purposefully availed themselves of the benefits of California as a forum. In so ruling, the court found that defendants had no "actual[]" "contact" with California beyond sending the retainer agreement to plaintiff in California before she left the state, which the court found "insufficient to establish . . . adequate contact with the state of California." The court also found that the firm's website did not constitute purposeful availment because it was mostly a "passive website that [did] little more than make information available to those who are interested in it." Second, the court concluded that there was insufficient proof that the alleged malpractice "is related to or arises out of [d]efendants' contacts with California" because the firm's negotiation with the VA occurred outside of California; the partner and associate dispensed their allegedly defective advice to plaintiff when she was "absent from the state"; and plaintiff signed the settlement agreement in Virginia.

7

Plaintiff filed this timely appeal from the court's order.

## DISCUSSION

Plaintiff argues that the trial court erred in granting defendants' motion to quash based on the lack of personal jurisdiction. In reviewing a trial court's dismissal for lack of personal jurisdiction, we independently review the court's legal rulings and its application of the law to its factual findings (*Integral Development Corp v. Weissenbach* (2002) 99 Cal.App.4th 576, 585 (*Integral Development*); *Jayone Foods, Inc. v. Aekyung Industrial Co. Ltd.* (2019) 31 Cal.App.5th 543, 553), but review those factual findings only for substantial evidence (*Burdick v. Superior Court* (2015) 233 Cal.App.4th 8, 17). In assessing whether factual findings are supported by substantial evidence, we ask only whether there is "'evidence that a rational trier of fact could find to be reasonable, credible, and of solid value . . . to support the finding'" and do so while "viewing the evidence in the light most favorable to the [finding]." (*San Diegans for Open Government v. City of San Diego* (2016) 245 Cal.App.4th 736, 740.)

## I. Principles of Personal Jurisdiction

California grants to its courts the power to assert personal jurisdiction as far as the United States Constitution allows. (Code Civ. Proc., § 410.10; *Integral Development, supra,* 99 Cal.App.4th at p. 583 [California's long-arm statute "'manifests an intent to exercise the broadest possible jurisdiction,' limited only by constitutional considerations of due process"].) The federal Constitution upholds the exercise of personal jurisdiction over an out-of-state defendant as long as "the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair

play and substantial justice.""" (*Goodyear Dunlop Tires Operations, S.A. v. Brown* (2011) 564 U.S. 915, 923 (*Goodyear*), quoting *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.)  "Minimum contacts exist where the defendant's conduct in, or in connection with, the forum state is such that the defendant should reasonably anticipate being subject to suit in that state." (*BBA Aviation PLC v. Superior Court* (2010) 190 Cal.App.4th 421, 429.)  The "minimum contacts" standard reflects an accommodation between the out-of-state defendant's "liberty interest in not being subject to the judgments of a forum with which he or she has established no meaningful minimum 'contacts, ties, or relations'" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 445 (*Vons*)) and the forum state's interest in its "'sovereign power to try causes in [its own] courts'" (*Bristol-Myers Squibb Co. v. Superior Court* (2017) 137 S.Ct. 1773, 1780 (*Bristol-Myers*)).  As this underlying rationale suggests, "[t]he primary focus of [the] personal jurisdiction inquiry is the" "relationship" between the defendant and the "forum [s]tate" (*id.* at p. 1779), and *not* the relationship "between the plaintiff and the defendant" (*Vons*, at p. 458).

Personal jurisdiction comes in two flavors—namely, (1) "'general' (sometimes called 'all-purpose') jurisdiction," and (2) "'specific' (sometimes called 'case-linked') jurisdiction."  (*Bristol-Myers*, *supra*, 137 S.Ct. at pp. 1779-1780; *Daimler AG v. Bauman* (2014) 571 U.S. 117, 122 (*Daimler*).)

General jurisdiction subjects an out-of-state defendant to suit in a forum state by anyone irrespective of the subject matter of the lawsuit.  (*Walden v. Fiore* (2014) 571 U.S. 277, 283 (*Walden*).)  Given its all-encompassing breadth, general jurisdiction will be found only when the out-of-state defendant's

9

"'affiliations with the [s]tate are so "continuous and systematic" as to render [the defendant] essentially at home in the forum [s]tate.'" (*Daimler*, *supra*, 571 U.S. at p. 119, quoting *Goodyear*, *supra*, 564 U.S. at p. 919.)

Specific jurisdiction subjects an out-of-state defendant to suit in a forum state, but only as to a specific suit and only where "the *suit*" itself "aris[es] out of or relat[es] to the defendant's contacts with the *forum*." (*Bristol-Myers*, *supra*, 137 S.Ct. at p. 1780, quoting *Daimler*, *supra*, 571 U.S. at p. 118.) Specific jurisdiction thus "'focuses on "the relationship among the [out-of-state] defendant, the forum, and the [current] litigation."'" (*Walden*, *supra*, 571 U.S. at p. 284.) The existence of specific jurisdiction turns on the facts of each case. (*Kulko v. California Superior Court* (1978) 436 U.S. 84, 92.) The courts have nevertheless articulated the standard against which to measure those facts: Specific jurisdiction will be found over an out-of-state defendant only when (1) "'the [out-of-state] defendant has purposefully availed himself or herself of forum benefits,'" (2) "'the "controversy [giving rise to the present lawsuit] is related to or 'arises out of' [the] defendant's contacts with the forum,"'" and (3) ""'the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"'" (*Pavlovich*, *supra*, 29 Cal.4th at p. 269, quoting *Vons*, *supra*, 14 Cal.4th at pp. 446-447.) The plaintiff asking the forum state to exert jurisdiction over the out-of-state defendant bears the initial burden of establishing the first two elements by a preponderance of the evidence, and if the plaintiff does so, the out-of-state defendant then bears the burden of convincing the court why the exertion of personal jurisdiction would *not* comport with fair play and substantial justice. (*Pavlovich*, at p. 273; *Vons*, at p. 449; *Bader v. Avon Products,*

10

*Inc.* (2020) 55 Cal.App.5th 186, 192-193; see also *Zehia v. Superior Court* (2020) 45 Cal.App.5th 543, 552 (*Zehia*) [plaintiff may not discharge its initial burden with allegations alone].)

**II. Analysis**

Because plaintiff has not argued to the trial court or to this court that California has general jurisdiction over defendants, we focus solely on the propriety of exerting specific jurisdiction.

### A. *Purposeful availment*

#### 1. *Defined*

As noted above, a court will exert specific jurisdiction over an out-of-state defendant only if the plaintiff establishes, as a threshold matter, that the defendant "purposefully availed" itself of some benefit of the forum state. (*Pavlovich*, *supra*, 29 Cal.4th at p. 269.)

An out-of-state defendant purposefully avails itself of a forum state's benefits if the defendant (1) purposefully directs its activities at the forum state's residents, (2) purposefully derives a benefit from its activities in the forum state, or (3) purposefully invokes the privileges and protections of the forum state's laws by (a) purposefully engaging in "significant activities" within the forum state or (b) purposefully creating "continuing [contractual] obligations" between itself and the residents of the forum state. (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472-476 (*Burger King*); *Vons*, *supra*, 14 Cal.4th at p. 446.) Purposeful availment can occur from afar; the out-of-state defendant's physical presence in the forum state is not required. (*Walden*, *supra*, 571 U.S. at p. 285.)

As the name and definition of purposeful availment make plain, an out-of-state defendant's conduct toward the forum State or its residents is relevant to the jurisdictional analysis only if

11

that conduct is purposeful, deliberate, and intentional. (*Burger King, supra*, 471 U.S. at pp. 472-473; *Vons, supra*, 14 Cal.4th at p. 446; *Pavlovich, supra*, 29 Cal.4th at p. 269; *Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1064 (*Snowney*).) An out-of-state defendant's contact with a forum state that is "random, fortuitous, or attenuated" is not enough. (*Burger King*, at p. 475; *Walden, supra*, 571 U.S. at pp. 285-286; *Sher v. Johnson* (9th Cir. 1990) 911 F.2d 1357, 1362 (*Sher*).) This is why the mere fact that the out-of-state defendant's conduct has some "effect" on a California resident is not enough, by itself, to constitute purposeful availment (*Pavlovich, supra*, 29 Cal.4th at p. 270; *Edmunds v. Superior Court* (1994) 24 Cal.App.4th 221, 230, 236 (*Edmunds*)); to count, that effect must be *intended* (*Goehring v. Superior Court* (1998) 62 Cal.App.4th 894, 908-909 (*Goehring*); *Zehia, supra*, 45 Cal.App.5th at p. 554).

2.      *Applied*

The trial court correctly concluded that defendants did not purposefully avail themselves of any benefits of California as a forum, and we reach this conclusion for two reasons.

First, this conclusion is dictated by the definition of purposeful availment.

Defendants did not purposefully direct any activities toward California residents. At most, the law firm operated a website that could be accessed by California residents, but the website did not target California residents specifically and it was plaintiff who first contacted defendants. In assessing whether an out-of-state defendant's operation of a website constitutes purposeful availment, we examine (1) whether the website targets California residents (*Snowney, supra*, 35 Cal.4th at p. 1063; cf. *Yue v. Yang* (2021) 62 Cal.App.5th 539, 547 [out-of-state

12

defendant sends "'California-focused' social media messages 'directly' to California residents," knowing their residency; purposeful availment]; *Zehia*, *supra*, 45 Cal.App.5th at pp. 556-557 [same]; *Moncrief v. Clark* (2015) 238 Cal.App.4th 1000, 1006-1007 [out-of-state resident made false representations to California-based attorneys to induce purchase of farm equipment; purposeful availment]), and, if it does not, (2) where the website falls on a "sliding scale" of "interactivity" with Internet users, with websites allowing the out-of-state defendant to conduct business with California residents at one end of the scale and websites that passively make information available at the other end (*Snowney*, at pp. 1063-1064; *Pavlovich*, *supra*, 29 Cal.4th at p. 274). Here, the evidence showed that the law firm did not target California residents (and hence that any effect on those residents was not intended): Although the website boasted that the firm had a "nationwide" practice and set forth examples of prior settlements from persons who had received substandard treatment in California VA facilities, the website included examples from all around the country and the website itself was accessible from anywhere. On the sliding scale, the firm's 2017 website occupied a "middle ground" because it ostensibly allowed plaintiff to exchange information with the firm's website (*Snowney*, at pp. 1063-1064), although the fact that plaintiff *herself* had to reach out to the firm directly confirms the minimal interactivity of the website.

Defendants did not purposefully derive any benefit from the forum state over and above the potential contingency fee promised in the retainer agreement and its consequent "effect" on plaintiff. But it is well settled that a discrete, shorter-term contract between an out-of-state defendant and a forum resident

13

"does not automatically establish purposeful availment" in the resident's "home forum." (*Goehring, supra,* 62 Cal.App.4th at p. 907; *Snowney, supra,* 35 Cal.4th at p. 1066; *Sher, supra,* 911 F.2d at p. 1362; cf. *McGee v. International Life Ins. Co.* (1957) 355 U.S. 220, 223-224 [long-term insurance contract may constitute purposeful availment].)

And defendants did not purposefully invoke the privileges and protections of California's laws, either by engaging in "significant activities" within California or by creating a "continuing [contractual] obligation" with a California resident.

Second, the conclusion that there is no purposeful availment is also supported by the cases that have examined when it is appropriate for courts to exert specific jurisdiction over out-of-state law firms and lawyers who are sued for malpractice.

In assessing whether law firms and lawyers have purposefully availed themselves of a forum state's benefits, courts have looked to a variety of factors. These factors include (1) whether the malpractice plaintiff/former client lived in the forum state at the time the firm or lawyers were retained, as well as when the allegedly defective legal services were provided (*Simons v. Steverson* (2001) 88 Cal.App.4th 693, 712-713 (*Simons*)); (2) whether the firm or lawyers were physically located in the forum state, licensed to practice law there, used those licenses to perform the legal services at issue, or were co-counsel with lawyers located in the state (*Edmunds, supra,* 24 Cal.App.4th at pp. 234-236; *Sher, supra,* 911 F.2d at pp. 1362, 1366; *Simons,* at p. 712; *Brown v. Watson* (1989) 207 Cal.App.3d 1306, 1313-1315 (*Brown*)); (3) whether the retainer agreement was executed in the forum state or whether the obligation to pay for legal services under the agreement was enforceable solely through the forum

14

state's legal process (*Sher*, at p. 1363); (4) whether the legal services alleged to be defectively provided were provided in the forum state and, if the services involved litigation, whether the firm or its lawyers acquired evidence in the forum state, filed suit in the forum state, or otherwise invoked the forum state's legal process (*Edmunds*, at pp. 234-236; *Sher*, at pp. 1362, 1366; *Simons*, at p. 712; *Brown*, at p. 1313-1315); and (5) whether the legal services provided or the plaintiff's malpractice lawsuit relied upon application—or misapplication—of the laws of the forum state (*Simons*, at p. 713).

None of these factors is dispositive; instead, courts look to the *totality* of these factors in assessing whether the firm or lawyers have purposefully availed themselves of the forum state. In cases where a forum state resident sues an out-of-state firm or lawyer for malpractice based on its legal services in representing the resident in out-of-state litigation, the forum state residency of the client, the collection of attorney's fees from that forum resident, and the execution of the retainer agreement in the forum state are not enough to constitute purposeful availment. (See *Sher*, *supra*, 911 F.2d at pp. 1362, 1366 [Florida lawyers represent California client in Florida criminal case; no purposeful availment]; *Edmunds*, *supra*, 24 Cal.App.4th 221, 234-236 [Hawaii lawyers represent California resident in Hawaii civil case; no purposeful availment]; see also *Mayes v. Leipziger* (2d Cir. 1982) 674 F.2d 178, 183-185 [California lawyer represents New York resident in California litigation; no personal jurisdiction in New York]; *Kowalski v. Doherty, Wallace, Pillsbury & Murphy* (1st Cir. 1986) 787 F.2d 7, 9-11 [Massachusetts lawyer represents New Hampshire resident in Massachusetts litigation; no personal jurisdiction in New Hampshire].)  But if additional

15

factors are present—such as the firm's or lawyers' investigation and acquisition of evidence in the forum state, the execution of a deed of trust in the client's property in the forum state as collateral for payment, or association with co-counsel operating in the forum state—the firm or lawyers are deemed to have purposefully availed themselves of the forum state's benefits. (*Brown, supra*, 207 Cal.App.3d at pp. 1313-1315 [investigation in state and association with co-counsel; purposeful availment]; *Sher*, at p. 1363 [acquisition of deed of trust; purposeful availment].) Along similar lines, a lawyer licensed in the forum state has purposefully availed himself or herself of that state's benefits if the lawyer represents a forum state resident while relying on forum state law (*Simons, supra*, 88 Cal.App.4th at p. 712), but not if the lawyer uses his or her law license from a different state to represent a client who was outside the forum state while the lawyer represented the client in litigation outside the forum state (*Crea v. Busby* (1996) 48 Cal.App.4th 509, 513-516).

The totality of the factors in this case confirms the propriety of the trial court's finding that defendants did not purposefully avail themselves of California as a forum. Although the trial court did not make a finding as to whether plaintiff had given up her "residence" in California by departing the state for an extended and indefinite period of time, it was undisputed that plaintiff left the state on the same day she sent the retainer agreement and was outside the state the entire time defendants rendered the legal services that plaintiff complains of in her malpractice lawsuit (that is, the negotiation of the settlement with the VA and the advice to settle). Defendants' offices were in Virginia; the partner and associate were licensed in Virginia (and

16

elsewhere), but not California; and defendants did not associate with any California-based co-counsel. The retainer agreement was sent to plaintiff in California and she executed it the day before she left California, but defendants did not take any California-based collateral to secure that agreement. The legal services defendants provided consisted of representing and advising plaintiff while exhausting her federal tort claim through the administrative process with federal lawyers known to be in Arizona. (See 28 U.S.C. § 2675(a) [Federal Tort Claims Act claims must be exhausted administratively and denied by the federal agency before any lawsuit may be filed]; *McNeil v. United States* (1993) 508 U.S. 106, 107 [so noting].) Although the underlying tort injury occurred in California, defendants did not need to travel to California to conduct any factual investigation because plaintiff's allegations had already been investigated by the federal agency and her claim was being administered by federal lawyers in Arizona when defendants were retained. The sole investigatory contact defendants had with California before settling the case was the placement of a single phone call to plaintiff's California-based private treatment provider to determine whether it would be covered by any settlement with the VA. Defendants relied in part upon a hybrid of federal law under the Federal Tort Claims Act and California law in assessing the likely recovery for plaintiff's claim during settlement negotiations, and plaintiff's malpractice complaint asserts that defendants were deficient in their understanding of California law.

To be sure, some of the factors tend to point toward purposeful availment—such as plaintiff's possible residence in California, the execution of the retainer agreement in California,

17

and the relevance of California law to defendant's settlement efforts and plaintiff's malpractice lawsuit. But the weight of the factors point away from purposeful availment because defendants were Virginia-based, did not seek to avail themselves of California's legal process in any way, and resolved plaintiff's federal tort claim entirely through the federal administrative exhaustion process that occurred wholly outside of California, all while plaintiff was not in California and her status as a California resident was reasonably in dispute.

Plaintiff responds by asserting that the injuries underlying her federal tort claim occurred in California, that her case *could* have ripened into a federal lawsuit had the federal agency denied her administrative claim, and that the lawsuit would likely have been filed in California, such that defendants should have therefore "anticipat[ed]" that any malpractice lawsuit arising from their representation would be brought in California. Although it is appropriate to look to the "contemplated future consequences" of a contract in assessing whether that contract constitutes purposeful availment (*Burger King*, *supra*, 471 U.S. at pp. 479, 480; *Sher*, *supra*, 911 F.2d at p. 1362), we reject plaintiff's chain of logic. To begin, we cannot ignore the fact that defendants resolved the case administratively and without the need to file any lawsuit. We are hesitant to premise the exertion of personal jurisdiction on possible contacts with a forum that *might* have arisen had the litigation turned out differently than it actually did. And even if we focus on how the representation might have unfurled at the time it began, it is far from clear that (1) the case would have proceeded to a lawsuit where plaintiff was represented by defendants, given how most of the example cases on defendants' website settled without litigation and how

18

defendants reserved the right to decline further representation if settlement did not pan out and if it determined that the matter did not warrant filing a lawsuit, and (2) the lawsuit would have been filed in federal court in California, given that venue was appropriate either in the state where the underlying tort occurred (here, California) *or* where the plaintiff resided (here, not California if viewed from the time plaintiff left the State without a definite plan to return). (28 U.S.C. § 1402(b) [defining proper venue for claims under Federal Tort Claims Act].)

**B.** ***The lawsuit does not arise out of defendants' contacts with the forum state***

Even if we assume that defendants had purposefully availed themselves of California as a forum by agreeing to represent plaintiff in pursuing her federal tort claim administratively and possibly in a future lawsuit, specific jurisdiction is only appropriate if the "specific claims at issue"— here, malpractice and related breaches—"arise out of," "relate to" or "have a substantial connection with" defendants' contacts with California. (*Bristol-Myers*, *supra*, 137 S.Ct. at pp. 1780, 1781; *Goodyear*, *supra*, 564 U.S. at p. 919 [requiring "'an affiliatio[n] between the forum and the underlying controversy'"]; *Vons*, *supra*, 14 Cal.4th at p. 448; *Snowney*, *supra*, 35 Cal.4th at p. 1068.)[1] Where, as here, the specific claims at issue are grounded in malpractice, we look to the nature of the malpractice and

1 California had for many years employed a sliding scale approach that relaxed the need to show a link between the cause of action and the out-of-state defendant's contacts with the forum when the defendant had "more wide ranging . . . contacts" with the forum (*Vons*, at p. 455), but the United States Supreme Court rejected that approach in *Bristol-Myers*, *supra*, 137 S.Ct. at p. 1781.

where it occurred (*Companion Property & Cas. Ins. Co. v. Palermo* (5th Cir. 2013) 723 F.3d 557, 560-561), and assess whether it relates to the lawyers' contacts with California.

The requisite relationship is absent here. In her complaint, plaintiff alleges that defendants committed malpractice (and thereby breached their retainer agreement and fiduciary duties to her) by giving her bad advice about whether to accept the $200,000 settlement offer. None of these activities occurred in California: Defendants negotiated the settlement agreement from their offices in Virginia with the federal agency lawyer in Arizona, and all communications defendants had with plaintiff—including the allegedly bad advice—occurred while plaintiff was no longer in California. Thus, there is no link between defendants' allegedly tortious conduct and any contacts they might have with California. Plaintiff points out that the underlying federal tort(s) happened in California, but that is irrelevant to whether plaintiff's current claims for malpractice-based liability have any ties to California. Had the settlement process broken down, had defendants decided to continue the representation, and had they decided to file a federal tort action against the VA in federal district court in California, then personal jurisdiction may have been proper in California. But that scenario is hypothetical; defendants' actual contacts with California remain too attenuated to establish the requisite link between those contacts and the malpractice-based lawsuit at issue.

\*      \*      \*

Because plaintiff did not carry her burden of establishing either of the first two requirements of specific jurisdiction, we have no occasion to examine the third element (that is, whether

20

California's exertion of jurisdiction would comport with "fair play and substantial justice").

## DISPOSITION

The order is affirmed.  Defendants are entitled to their costs on appeal.

**<u>CERTIFIED FOR PUBLICATION</u>.**


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ